Your Honor, I'm William Bernard, representing Citizens for Constitutional Fairness. Due to my blindness, I'm going to have Mr. Smith read a short statement. I want to only take five minutes or reserve 15 minutes for Mr. Swift. Okay, go ahead. Thank you, Your Honor. I come before this honorable court today representing Citizens for Constitutional Fairness and its fellow plaintiffs who sought and were awarded by Jackson County just compensation under Citizen-initiated Measure 37, which was enacted in December of 2004. Measure 37 was legislation designed to compensate landowners who had suffered a loss of values caused by statewide land use regulations emanating from Senate Bill 100, enacted by the Oregon legislature in 1973. Measure 37 allowed claims to be filed with local government entities seeking just compensation for the loss of value. The measure afforded government, in this case Jackson County, an alternative to payment of monetary compensation. Measure 37 allowed the county to, quote, modify, remove, or not apply, unquote, the value-reducing restrictions such as changes in zoning and density, restoring the value which existed at the time the claimants acquired ownership. The requirement to provide just compensation could be thus satisfied. The orders issued to these plaintiffs were a good-faith effort by Jackson County to comply with Measure 37. The county was obviously guided by the language in Caldwell v. Jackson County, wherein the Oregon Court of Appeals at 36 Org. Appellate 821 affirmed the decision issued from the Jackson County Circuit Court. The Circuit Court had held that ORS 3.130 had preserved the jurisdiction of the county commission acting as the county court in the transaction of county business. Caldwell was in action in inverse condemnation. The payment of just compensation by the county was a matter of county business. In the incident case, to further cement the relief granted in the orders, the county instructed the county clerk to record the order for each claimant against the title of the claimant's property. This process was in accord with a similar act by a neighboring county which changed the zone for a claimant. The Court of Appeals in DLCD v. Klamath County, 168 Pacific 3rd 1241-2007, approved the process as a proper and effective response to the claim for just compensation. In fact, the court held that the only effective way to avoid paying monetary compensation was to actually accomplish a specified task, that a promise of a future act would be ineffective. The court stated as follows, quote, In other words, a decision under that statute is one that actually accomplishes the modification itself, unquote. Here, Jackson County's recorded orders actually accomplished the intended modifications. In Corrie, the Court of Appeals of Oregon, held Measure 37 claims are protected property interests. The court relied on the U.S. Supreme Court case of Board of Regents v. Roth. These constitutionally protected rights were recognized and vested by Jackson County's affirmative act of recording the orders. Additionally, there is no reference whatsoever in Measure 37 to waivers, no process whereby a claimant could request anything but just compensation. Many claimants who filed claims at Jackson County were later informed that they also had to file a claim with the state as well. This evolved into the dual waiver concept, which is nowhere to be found in the measure. Rather, it was formed out of whole cloth by the state agency DLCD to frustrate the attempt of claimants to attain any due process or just compensation. These are fundamental rights fully protected by the Fifth and Fourteenth Amendments. The U.S. Supreme Court in Haywood v. Drown, 173 Lawyers Edition 2nd, 920, 2009, prohibits the state from taking those rights by way of ipsa dixit declarations. Basically, the state's lack of authority to nullify a federal right or cause of action they believe is inconsistent with their local policies. The ipsa dixit nature of the state's position, such as the concocted dual waiver scenario, is further evidenced by the fact that it would ask this Court to approve the acts of its ipsa dixit agency, DLCD, and the judicial and legislative takings by endorsing the notion that Measure 49 supplanted Measure 37, nullifying fully vested property rights. Oregon law in its Constitution requires a statute to expressly state an intent to apply it retroactively. There is no such language in Measure 49. Both the Supreme Court in South Beach and, more recently, the Ninth Circuit Court of Appeals in the Veterans for Common Sense case stated that property rights are protected by the Texas Clause and due process clauses of the Fifth and Fourteenth Amendments, citing Ettore and Coombs as authority. The Oregon Court of Appeals, in an exercise of ipsa dixit, dispatched Ettore and Coombs as obsolete. The rights are fundamental and must be examined under a heightened scrutiny standard. They are not the product of land-use decisions. Rather, they are protected property rights as enunciated in Ettore and Coombs. In fact, Oregon continues to ignore the expressed language in Measure 37 that decisions thereunder are not land-use decisions. It also ignores the Remedies Clause of Oregon's Constitution. Oregon wants to take but not pay. These plaintiffs' constitutionally protected property rights cannot be taken without the payment of just compensation. Thank you. Okay. Thank you very much. We're out of time. I'm Jack Swift. I'm counsel for the plaintiffs and appellants in this case. I'd like to focus for the Court that this is a takings case. Ours and their co-plaintiffs came before the district court seeking judicial declarations. They wanted determinations that the rights that they developed under the prior Oregon law, Measure 37, were protected property interests. They wanted determinations that those interests had been canceled and taken from them by the enactment of Measure 49. I have a couple of questions. One of them is, your colleague mentioned that there was a requirement developed in under 37 that there were a waiver required both from the municipality and from the State. Do any of the plaintiffs in any of these cases have, did they have the State waivers at the time that Measure 49 went into effect? It depended upon the individual circumstances, Your Honor. I think in the excerpts of the record declarations of those citizens, plaintiffs, some speak to acquiring both and some speak to not acquiring the second. So any of them? You're saying that there are some plaintiffs here who did have the State waiver? I didn't think so. Are there any? I don't believe that under the terms of Measure 37. That's a different question. But I'm asking you first, did the plaintiffs in this case, in fact, have a State waiver? I think I'm having difficulty hearing you. Did the plaintiffs in this case, in fact, have a State waiver? Yes. They did? Some did. All right. Well, I'd like to know where in the record it shows that. Not necessarily now, but when you sit down and rebuttal. Okay? Well, on the language, nobody had a, quote, waiver. I mean, to me, this nomenclature is driving kind of a misconception in this case. The document that is given does not say that we're waiving a right. And the referred ordinance doesn't say we're waiving. It simply says that they have decided not at that time to proceed with a claim. I mean, nobody has any document that says a waiver on it. That's correct. Does anybody have a document that says we're not? It's terminology developed within the State. Does anybody have any document that says we're never going to change this? Not only that, are we not going to apply this now, but we're never going to change it? Honestly, Your Honor, I'm having real trouble hearing you. Does anybody have a document saying that we're not going to change that? Not only are we now not going to apply the previous regulation, but we're never going to change our minds about that? No. The documents that were issued, which are the orders pursuant to claims submitted to whichever claimed-upon entity, speak to the validation of the claim, that they have an entitlement to compensation. And then they speak to the, in the case of the Jackson County orders, which I think are in the record, excerpts of the record, they speak to the county not having the money to pay the compensation and the election to not apply specific land-use regulations that had been generated after the acquisition of the property by the owner, which gave rise to the claim. In Jackson County, didn't the document that they received say, Jackson County does not promise claimants that claimants will eventually be able to put the property to any particular use? That's true. So why isn't that a waiver? Why isn't that not what you call a waiver? Why isn't that something that would eliminate any idea that you have a waiver? If you have a document that says, Jackson County does not promise claimants that claimants will eventually be able to put the property to any particular use? Because in the same document, Jackson County ordered that that order be included and attached to the title record of the particular property. But I would suggest as a waiver, I mean, so they filed it. But as Judge Smith was saying, it still wasn't ever said to be a waiver. In fact, it said just the opposite, that we are not committing to what might happen in the future. In the context at the time that those went down, the controversy over whether the claimant had to have dual determinations by both the state and the county, that was an issue that was up in the air. But whatever it was, that's a state law question, right? And I don't see how that can work away a property deprivation or a takings clause. In other words, a takings clause problem. The state, whatever else is going on here, at what point the Measure 33, whatever it is, whether it's a waiver or promise or whatever it is, goes into effect as a purely state law question, no? Well, the issue is absolutely a state law question. I have no quarrel with that. The problem is that the authority to waive, to not apply, as the Oregon courts have called it, pay or waive, that authority was relief for the claimed upon entity. Under Measure 37, the only thing ---- But Oregon has said no. Oregon, as my understanding has said, that you needed to have an assertion by the county that they weren't going to enforce the prior regulations and by the state. That's what Oregon has decided. Is that correct? I believe so, yes. All right. Let me ask you one further question. As to this kind of disclaimer language that I cited to you from Jackson County, were these the same kind of disclaimers that were put on all the documents the plaintiffs received?  Well, no, not all counties. Absolutely not. And in the states, the form on the order used different language, too. So the only thing that is consistent here, and we're not asserting that Measure 37 gave any claimants any entitlement to a waiver, plain reading of the statute speaks exactly against that. The only thing provided under Measure 37 to the claimant was monetary compensation for the value of the regulatory takeover. Cause of action for monetary. Well, what exactly are you saying is the vested property right that was taken? Exactly. Their entitlement to monetary compensation. And inchoate, whether exercised or not. That's Section 1 of Measure 37. In other words, is your argument that having said that you are entitled to this money, even if you never have a final judgment for the money, we cannot change our mind about it? Is that what you're saying? Once the entitlement, again, speaking to American Manufacturers Insurance and Sullivan, speaking to Roth, once the entitlement. What was the second thing you said you were speaking to? The two cases from the 1990s, the State Board of Regents versus Roth. Roth is a lot older than the 1990s, and Roth is a procedural due process case. What else are you saying? The most recent being the American Manufacturers Mutual Insurance versus Sullivan. Both of those stand for the proposition and recognize that once an entitlement has been validated and gone through the procedure, that becomes a protected property interest in itself. So you're saying those were procedural due process cases, right? Yes. Okay. Did you have any problem about procedural due process here? Did you get all the process you wanted? They went through the process, they were validated, and the orders that issued proclaimed their entitlement to that compensation. That's the problem. But they actually didn't have any entitlement to compensation because it was at the option of the counties whether to pay them the compensation or instead to say we're not going to apply the regulation to you. Which was purely a relief to the county. Okay. But the question is what was the relief in the end? Was it a promise in perpetuity or a promise for now? Well, I would suggest to the Court that if you looked at the alternative procedures set up in Measure 37 for payment, it speaks to the creation actually by the State of a fund to pay these claims were validated subject to the State appropriating some money to that down the road. If in the alternative the order had been we're going to pay, and here's your check drawn on this fund, which by the way at the moment doesn't have any money in it. It's a non-sufficient funds check. And you are stuck with that for a year and a half, and then they enact Measure 49 and tell you, by the way, we are now stopping payment on that check. The entitlement to compensation didn't go away. It didn't merge into anything. That entitlement is still there. Let me ask you another question. Are you suggesting the State can never regulate this land for the rest of time? No, I'm not suggesting that at all. Are you suggesting that your clients can sell their waiver? I think that that was the intent. I'm not asking whether it was the intent. Are you arguing they can sell their waiver? If the waiver stands for a merger or something else as compensation, then I would argue, yes, that's property. Are you arguing their heirs can inherit it? Again, if the court finds that there's a merger of entitlements into that waiver, which I don't believe there is, but if the court finds that there is, then that would be property and that would be transferable. But Oregon decided not, right? That's another State law question. I mean, they decided that this obligation, whatever it was, ran only to the owners at the time, the owners who originally bought the land for the regulation and disappeared when it was sold. Isn't that what Oregon decided? That's correct. That's a funny kind of a property interest, isn't it? That's correct. You have, in this case, interesting positions by the courts of Oregon. Prior to the enactment of Measure 49, three cases out of the court of appeals spoke to the fact that these things being protected property interest. Okay? After Measure 49, we have two cases speaking to the same issue, ignoring their own precedent, saying that, well, we don't analyze things according to protected property interest anymore. Isn't the problem of Verbal One that, to take something like, in regulatory takings in general, you don't have a takings clause problem until you've taken essentially all or almost all of the value. But you have a property interest such that if somebody wanted to do something about it, you might have a right to process. Isn't that the difference? I mean, let's take Oldbrook v. Kelly and benefits cases. Clearly, somebody can decide. There's a statute that says in X circumstance you get a certain amount of money. If you're getting that benefit, then you have a right to a property, to a due process if they want to take it away. But if somebody passes a statute and says we're not doing this anymore, that's not a taking. Your Honor, first of all, I understand that. And I would point out that the very first question developed by the Ninth Circuit in analyzing these things is the question of whether there exists a protected property interest. If yes, then you proceed to has there been a taking. Alternatively, if it's no, it's not necessarily the end of the story, because then you can get into a substantive due process claim, which has an altogether different standard of evaluation, which is rational basis. So the court's own algorithms for analyzing these. First question, is this a property interest, the entitlement to the money? And there's 200 years of court precedent to the effect that if that's an entitlement to money, it's. I don't know for sure under the statute there was no entitlement to money. There was no entitlement to money, because it was at the complete. That's the only entitlement. Well, then there isn't any, because we know that the county could simply say we're not giving you the money. We're simply going to tell you that we're not going to enforce this right against you. So there was no entitlement to money. And why isn't that analogous to even zoning agreements, where we give zoning for something, but until you have gone out and acted in reliance on it and built your property pursuant to it, it's not a piece of property right either. I mean, if zoning permissions are not property right, it is hard for me to see how this can be considered a property right. And I just can't buy your argument that the Oregon courts of appeals are all wrong, because I don't think it's within our province on the Ninth Circuit to go back and say, well, this is a State-created property right, but we happen to disagree with all of the courts in Oregon as to what that right is. I'm out of time here. Why don't you answer the question, please? If I can answer that question. The we're not in dispute with all of the courts of Oregon. As I pointed out, three of the courts are in dispute with all of them that came, that decided it after 49 was issued. After the 49 controversies developed, their position changed. They did not address their earlier decisions. What they did, they say they don't count, because property interest analysis undertaking is obsolete, and we don't do that anymore. And to the other half of your question, you were speaking to this being a land-use permit. That waiver authority was no entitlement to the claimant. That was a relief granted to the claimed-upon entity. And if the dissolution of that is going to cost that agent of the State money, then our position is that's a beef between the agent who acted under his authority and his principal, who subsequently yanked that authority away from him. Thank you. Thank you very much. Counsel? May it please the Court, Stephanie Striffler for the State of Oregon and Richard Whitman. And with the Court's permission, I'd like to take 15 minutes and reserve five for counties. And please do it, because throughout this calendar, we've had to police this and protect the second arguer. I will try to be careful, Your Honor. For the takings claim, which seems to be the central claim in both cases, although there are some other issues as well, of course, the question is what is the property interest that's been taken. The Court's been asking questions about that. I want to make two quick points about that and then be sure to talk about Measure 37 and cover how exactly Measure 37 worked. But the point I want to make first is this Court has already said that Measure 37 orders or waivers, which isn't a word in Measure 37, but Measure 37 orders were not contracts and not judgments. So we're left to figure out what else. And the second, the second, well, there are two things about that. First of all, it was an unpublished memorandum disposition, right? Correct. So it's the law of the case for the case in which it was issued. But there are two cases here, and one of them was not the case in which it was issued. That's, that's, that's, I suppose that's technically true, Your Honor, yes. And second of all, with regard to the judgment question, they were answering a different question, right? They were answering whether it was a judgment for separation of powers purposes. It's not necessarily the same thing. Yes, although related. And even if this Court's previous determination on those issues isn't, isn't binding for both cases, I should mention that the Oregon Court of Appeals has made the same determination. And I think that whether what the nature of Measure 37 was is primarily a question of State law, and we've, we've cited the cases in our, in our brief. But in any event, on this appeal, there's no contract claim as such. Not. Including in the case that wasn't the original one. That's, that's correct. And there's no judgment claim exactly either. Right. There's no separation of powers claim, but the plaintiff has been trying to identify some kind of, of property interest. What, what is the answer to my question about whether any of the plaintiffs in this case had State orders? Well, I have a, a record answer and an outside the record answer, Your Honor. The record doesn't show anything about whether there were State waivers. In some cases, these folks did get State waivers. In, in some cases, they didn't is my extra record answer. I'm also not sure. I think in one case, there was a filing with the clerk and recorder, was there not, of this, quote, waiver, which we would stop calling it a waiver because they don't call it a waiver. A waiver can be a property right, but they don't call it a waiver. The, the referred ordinances don't call it a waiver. And it seems to me that that's confusing our thinking some. Well, let me see what I, what I can do with that. What Measure 37 said didn't use the word waiver, didn't use the word waiver in the sense that we might talk about it with respect to a waiver of rights in a contract or something like that. What Measure 37 said was that government could not apply the regulation at issue, and that became colloquially referred to as a waiver. And neither part, neither Measure 37 nor the orders as they were issued said forever. That's correct. And what these orders did indicate that the county would not apply the regulation in question. They did, they did not say forever. They also were clear that there might need to be other permits, including a State Order, before any development could occur. I'm not even sure why that's an issue with respect to the takings claim. It's something that troubles the plaintiffs, but I don't think it helps them establish whether there's a property right or not. So the, another point I wanted to make about that is that the cases that plaintiffs are citing from the Oregon Court of Appeals with respect to property right are cases about procedural due process. And as you already commented, Your Honor, that's a different question from whether there's a kind of property right that can be taken. So to focus on what Measure 37 did, there's absolutely no entitlement to money. That is a fundamental premise, as I understand it, of the plaintiff's case, and it's just fundamentally. And yet plenty of times payments were made in money. Real payments were made, and you couldn't go back and get that money back from people. That's correct, although I'm only aware of two instances, and those are two instances that plaintiffs bring up. One is the English case, which ended up as a judgment, and the other is the Palin case in which the city of Prineville decided it had, at its option, made the decision to pay money. But Measure 37 itself didn't entitle anyone to money. So the way I look at the folks who got money is it's kind of like a vested right to develop the property, so that if someone had moved far along enough in the process under Oregon law, they would be entitled to continue their development when the law changed. But many people were not at that point, either by getting money or through their development, and Measure 49 altered that. So when, in your judgment, does a Measure 37 order holder receive some kind of a final vested right? I mean, it seems to me they're arguing they get the vested right when they have the state and the county or just the county saying they have the order. And now you're asking us, when do they get this vested right? Because there were two instances. You decided where they got something. Well, if vested means something that can't be taken away, I think, sure, if you have money in your pocket, the government's not can't. I think of a final judicial judgment. Or a final judicial judgment. That cannot be taken away. Is a crude cause of action enough? No. And the Oregon court of appeals has addressed that in the Luthi and Leeson cases and said a cause of action for money is not enough. And those were cases where the claimants contended that the orders that they got didn't not apply enough of the regulations, and so they sought money. But Measure 37 itself leaves it purely to the government whether to pay money or to say, instead of paying money, we're going to not apply the regulations. Does Measure 49 change that at all? What Measure 49 does is, with respect to Measure 37 claimants, is takes the money out of it and simplifies it and says, if you made a claim under Measure 37, then we're going to look at that claim again, and you can qualify for up to ten home sites, and it sets out qualifications for getting home sites. So you can also at any time bring a claim that deprived you of total use of the property and could always bring up a takings claim under Supreme Court precedent. That's correct. And you could also bring a claim for to say that you had a vested right. And this is to finish the question of when does somebody have a vested right. Most of the counties adopted procedures or already had procedures for a claimant to pursue a county process to establish that they had gone far enough in the past that they couldn't change that. And Measure 49 itself recognized this common law vested right. What is the value of common law? Isn't it essentially constitutionally based in the long run? I think so, yes. It's certainly a fairness-based doctrine. But under Oregon law, you have to establish that you've substantially pursued the development before you have that right. Which might include, for example, spending a lot of money on architectural fees and things like that. That's correct. That's necessarily in the ground. Well, there's some debate about that under Oregon law. It could be a lot of money, potentially. In most cases, it is going to require some kind of construction and some kind of movement towards that. But with that ---- Doesn't the Holmes test on detrimental reliance change that just a little bit? Well, I'm intending to refer to Clackamas County versus Holmes, if that's what you mean, which is the lead Oregon decision on common law vested rights. So there's currently all kinds of litigation under Measure 49 about how far one had to go under Measure 37. But that's sort of not our problem. No. Because they're not claiming they did any of it, whatever it is.  I was ---- No, my reference ---- I'm just trying to clarify that. I was just trying to clarify the same thing she's asking. Right. And are all the parties here asking for money? It's not entirely clear what they're asking for. I think we've heard they're asking for a declaration. They're asking for some kind of compensation. So some are saying we want the money that we think rule ---- that 37 would have given us. And others are saying we want the irrevocable waiver of a right to assert these zoning ordinances. Perhaps. See, I ---- that's what's so confusing to me. Yeah, I think it confused the trial court judge also, because he kept asking that question, what exactly are you asking for? And that's part of why I think it's important to identify what is the property right that they're claiming. Has anybody ever answered the question, if 49, if we were to say that 49 improperly took away your rights under 37, so you get 37 back, what do you want? Where are you now? What would you be claiming? Would some of you be claiming money because of the county can't back out? Or would some of you want some kind of a recordable instrument that says you can develop your land to a higher degree? That's a good question, Your Honor. What exactly the relief would be in that case? If those are asserting that they have a waiver in hand, and it's a true waiver, then they could be saying, well, this is a property right. We don't need to go to court to enforce it. You can go to ---- if you violate it, we'll go to court to sue you for violating, but we don't need to go to court to enforce or get anything. We have a waiver in hand. Others are saying, we don't have a waiver. We've got a right to money. But they don't have the money. All they've got then is a claim for money. And it would seem to me for that, they would have to bring a lawsuit, and I think that our Ninth Circuit case of Alito suggests that that would not be a recognizable claim at this point. That's correct. And as best I understand why the plaintiffs focus on money, Your Honor, is because if they focus on what the county order did, they're really talking about a zoning permit. And that's what the Oregon appellate courts have said that a Measure 37 order not applying regulations was, is a zoning permit. And then if you look at apply takings analysis to that, you're looking at regulatory takings analysis. You're not looking at what the plaintiffs are trying to say, which is that somehow this permit is some kind of compensable right, because it's not ---- it's a permit that government can alter, with the exception of if it goes too far under regulatory takings analysis or if it's a common law vested right. Otherwise, that's something that government is free to do. And in this case, it was the people of Oregon who did that through the legislative process and a referral to the people of Oregon. But interestingly, Measure 49 does provide, I mean, just as a matter perhaps of fairness or a sense of ---- or a political sense, certain rights to the people who make this claim that other people don't have, i.e., to build even ---- build some, on some home sites that would not otherwise be buildable on. Is that right? Measure 49 also provides relief in the future. But the first part of 49 does address people who filed Measure 37 claims. You're right. So those folks, folks who filed Measure 37 claims are not left out in the cold. They do have the opportunity to pursue relief under Measure 49. But for certain things and not other things. Right. For instance, if there were any plaintiffs who wanted to engage in commercial development, wouldn't they have no remedy under 49? They would have no remedy under 49, but they would be no worse off than they were before Measure 37. And I promised I would watch the clock, so with the Court's permission, I'll leave it there. Thank you very much. Thank you. Thank you. May it please the Court, Frank Hammond representing Jackson County in the Citizens' Case. The Citizens' Case does not include the substantive due process and equal protection issues present in Bowers. I want to talk to you today about rightness issues and issues of the effect of the former decision by the Ninth Circuit on the Citizens' Case. Citizens is an applied taking case, meaning that the plaintiffs must show that the claim is ripe. Was Citizens the earlier case or not? Citizens is the earlier case. Okay. Meaning the plaintiffs must show that the claim is ripe. But plaintiffs have never sought relief under Measure 49, which substituted relief from Measure 37. And they have never shown that compensation is inadequate under Measure 49 or any of the other State provisions that might apply. Now, I don't believe the record shows that any of these plaintiffs were trying for, in the Citizens' Case, were trying for a commercial use. I could be wrong about that. But I want to note that. It might have been, you're saying they not only weren't trying for a commercial use, but that they weren't seeking a declaration that they had the right to try for a commercial use? They were seeking the right to have regulations removed, or the fact that regulations would be removed from their property in order to allow development. They were seeking a specific performance of 37. In the end, I am confused. Declaration, I guess, would be the best. Declaration of rights. What their declaration is, is that what they're seeking now in the sixth claim for the surviving claim is a declaration that they're entitled to show a taking, that a property right has been taken. What they would do with that declaration, I assume, is seek monetary damages. And Mr. Swift himself said this is essentially a takings case. So they have to show ripeness under Williamson County, and they haven't done so. I think many of these ---- Kagan is saying that, I mean, presumably one could know whether, quite aside from what they were seeking, whether their land rights at the time they bought the property would have given them the right to build anything commercial. In many instances, the answer might be no, and then they wouldn't have any right to build anything commercial now, but we don't know that. We don't know that, and it's never been shown in any particular case. However, as I understand it, if, in fact, they wanted to engage in commercial development, it seems to me those claims would be ripe, since those plaintiffs would have no remedy on Measure 49, and pursuing administrative action would be futile. Well, they did have a remedy which would have been vesting the right under the Holmes test, and they haven't shown that. They haven't shown an attempt to vest a right to develop a commercial use, and thus have not shown a takings case. But aren't those both issues which could be solved by amending the complaint? In other words, I mean, we seem to have a vacuum here, but suppose somebody filed a complaint and said, when I bought my property, I had the right to build without saying that that's what I'm going to do, but just that I had that right at the time I bought the property. My property is worth less now because I don't have that right anymore, and I have, in fact, not done anything with regard to – and I have a Rule 37 waiver, but I haven't actually done anything towards building anything. And that – if that were the complaint, would that be a right claim? Because they have no remedy at that point under Rule 39, right? Would it be right at that point? Let's see if I followed you right. At the time I bought the property, I could have built commercial property. Right. I'm not saying whether I am going to or not, but I could have. And I – I haven't done anything yet with regard to building the property, but I have this order that says you're not going to apply any new rules to me, one of which is I can't build commercial property. At that point, there would be nothing more to do with regard to Rule – Measure 49 because it would have no remedy for them, right? That's right. And so the real problem here is a vacuum. We don't have that complaint. That's right. We don't know that we don't have somebody in that circumstance. We just don't have it. They never pled that. And we're years into the process, and the – I'm out of time at this point. Go ahead. Go ahead and answer the question. Well, the Williamson case would require them to have pled that and you to abstain from going forward with the – Well, then we wouldn't abstain. Then we would go forward. If they pled that, we would go forward. It would essentially be a futility claim because there would be no remnant. They would have to show that they could not have qualified under the vested rights. Right. So if they filed the complaint I just described, we would go forward. But you're saying they haven't done that, so they haven't demonstrated. They haven't done that, and they don't have a claim under Williamson. Okay. Thank you very much. Thank you. We will give you a couple minutes for rebuttal. Very briefly, Your Honors. I think the issue turns, according to the Court's own system in the Ninth Circuit on this determination of whether there was a property interest or there was not. This is not a land-use case. This is not about regulation of property. This is about what the Ninth Circuit would call new property. I think in the Schneider case, the Ninth Circuit talks about new property created by statutory law within the State. Okay. In those cases. That's what this case is about. That's like the benefits cases I was describing. Does anybody doubt that you could pass a law tomorrow saying no more welfare benefits and that would be the end of it? I've got to beg your pardon, Your Honor. Does anybody doubt that you could pass a law tomorrow saying no more unemployment benefits or no more Social Security benefits or no more welfare benefits, which is usually what the new property refers to? No question at all. Right. So it doesn't help you. It's not relevant. That's prospective change in the law. Our problem is that we're dealing with a retrospective cancellation of rights that already accrued and validated prior to the cancellation. And it's purely the taking issue that you can't do that according to 200 years of precedent, according to the Ninth Circuit's own precedent. So are you seeking a claim that just for money you want money because they did it, or are you saying that legally they just don't have that authority and we want the right to build pursuant to 37? Which are you asking for? We are asking for a declaration that there has been an improper taking. Therefore, you agree you don't have rule 37 rights anymore, ballot 37 rights. You don't have the right to build pursuant to ballot 37 anymore. No. No. You agree with that. The state retracted the county's authority to grant that permission. Do all of the claimants agree with you, then, so that nobody is seeking a declaration that their property can be built pursuant to 37? Everybody is seeking only damages. I believe there's a Wells case out of the United States Supreme Court speaking to the effect that in an inverse condemnation action, the claimed-upon entity always has the right to waive whatever it is that's creating the problem, so that if the declaration that there has been an improper taking, that would, to my mind, in state court, give rise to an action in inverse condemnation for the loss of that property right, which would in turn trigger the state's authority or the claimed-upon entity's authority to get rid of the offensive regulation. I'm out of time. Okay. Thank you very much. Thank all of you very much for your arguments. The cases of Bowers v. Whitman and Citizens for Constitutional Fairness v. Jackson County are submitted, and we will turn to the last case of the day, which is Oregon National Desert Association v. Freeborn.
judges: Ebel, Berzon, Smith